## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERICA BLOOM SIMCHON,<br>ISAAC SIMCHON, and,<br>NICHOLAS PADULA, on behalf of themselves<br>and others similarly situated,<br><br>     Plaintiff,<br><br> -against-<br><br>HIGHGATE HOTELS, LP,<br>COVE HAVEN, INC.,<br>STARWOOD HOTELS & RESORTS<br>WORLDWIDE, INC.,<br><br>     Defendants. | No._____<br><br><br>__CLASS ACTION__<br>__COMPLAINT__<br><br><br><br>Plaintiffs Demand a Trial<br>by Jury |

Plaintiffs ERICA BLOOM SIMCHON ("Ms. Simchon" or "plaintiff"), ISAAC SIMCHON ("Mr. Simchon" or "plaintiff")[1] and NICHOLAS PADULA ("Mr. Padula" or "plaintiff") (collectively "plaintiffs" or "Lead Plaintiffs) on behalf of themselves and others similarly situated ("the Class"), by and through their attorneys Levine & Blit, PLLC, complaining of defendants HIGHGATE HOTELS, LP ("Highgate"), COVE HAVEN, INC. ("COVE HAVEN") AND STARWOOD HOTELS & RESORTS WORLDWIDE, INC. (hereinafter collectively "Defendants"), hereby allege:

**NATURE OF THE ACTION**

1. Defendants, owners and operators of three hotels commonly billed as luxurious 'romantic destination resorts', with such amenities as a 'champagne glass,

---

[1] Plaintiffs Erica Bloom Simchon and Isaac Simchon may be collectively referred to throughout this Complaint as "plaintiffs Simchon".

whirlpool bath for two', in an area of Pennsylvania commonly known as the Poconos, have deceptively and fraudulently induced each and every of their guests to pay millions of dollars per year in misleading fees, on top of the regular costs of their rooms, in violation of the law.

2. Defendants' Hotels, which are the subject of this litigation, are Cove Haven Resort, Paradise Stream Resort, and Pocono Palace Resort (the "Hotels"), which fall under the group name, Cove Haven Entertainment Resorts.

3. More specifically, at the time of booking, and at the time of check-in and check-out at the Hotels, defendants inform their guests that, in addition to their total room rate, guests must pay an additional 18-20% gratuity/tip ("the Stated Gratuity"). In a blatant and highly successful (based on the millions of dollars defendants have collected) scheme, they defraud their customers, as defendants falsely and misleadingly tell customers that this gratuity goes to staff, separate and apart from the amount paid for the room.

4. Unbeknownst to their customers, the Stated Gratuity is retained by defendants, and is not passed on to service staff as a true gratuity for services rendered.

5. Accordingly, each and every dollar that defendants have collected pursuant to the 18-20% 'gratuity' has been fraudulently collected by defendants by misleading its customers in furtherance of this scam, in violation of the various laws articulated herein.

6. Plaintiffs, therefore, bring this class action to redress damages to plaintiffs and the Class due to defendants' violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), New York General Business Law § 349

("NY GBL"), Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), common law tort of Fraud, and Unjust Enrichment, to remedy defendants' fraudulent scheme of inducing customers to pay an additional 18-20% fee under the guise of 'gratuity'.

7. Further, in each state in which a member of the Class booked a hotel room in any of the Hotels, Defendants violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

1)  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. 8-19-1, et seq.;
2)  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code 45.50.471, et seq.;
3)  Arizona Consumer Fraud Act, Arizona Revised Statutes, 44-1521, et seq.;
4)  Arkansas Deceptive Trade Practices Act, Ark. Code 4-88-101, et seq.;
5)  California Consumer Legal Remedies Act, Cal. Civ. Code 1750, et seq., and California's Unfair Competition Law, Cal. Bus. & Prof Code 17200, et seq.;
6)  Colorado Consumer Protection Act, Colo. Rev. Stat. 6 1-101, et seq.;
7)  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat 42-110a, et seq.;
8)  Delaware Deceptive Trade Practices Act, 6 Del. Code 2511, et seq.;
9)  District of Columbia Consumer Protection Procedures Act, D.C. Code 28 3901, et seq.;
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. 501.201, et seq.;
11) Georgia Fair Business Practices Act, 10-1-390 et seq.;
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues 480 1, et seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes 48IA-1, et seq.;
13) Idaho Consumer Protection Act, Idaho Code 48-601, et seq.;
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq.; 1

3

5)    Indiana Deceptive Consumer Sales Act, Indiana Code Ann. 24-5-0.5-0.1, et seq.;

16)    Iowa Consumer Fraud Act, Iowa Code 714.16, et seq.;

17)    Kansas Consumer Protection Act, Kan. Stat. Ann 50 626, et seq.; 5 Case 1:15-cv-01214-KAM-RML Document 1 Filed 03/09/15

18)    Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. 367.110, et seq., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann 365.020, et seq.;

19)    Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. 51:1401, et seq.;

20)    Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. 205A, et seq,, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, 1211, et seq.,

21)    Maryland Consumer Protection Act, Md. Corn. Law Code 13-101, et seq.;

22)    Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

23)    Michigan Consumer Protection Act, 445.901, et seq.;

24)    Minnesota Prevention of Consumer Fraud Act, Minn. Stat 3 25F.68, et seq.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. 325D.43, et seq.;

25)    Mississippi Consumer Protection Act, Miss. Code Ann. 75-24-1, et seq.;

26)    Missouri Merchandising Practices Act, Mo. Rev. Stat. 407.010, et seq.;

27)    Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, et seq.;

28)    Nebraska Consumer Protection Act, Neb. Rev. Stat. 59 1601, et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. 87-301, et seq.;

29)    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. 5 98.0903, et seq.;

30)    New Hampshire Consumer Protection Act, N.H. Rev. Stat. 358-A:1, et seq.;

31)    New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8 1, et seq.;

32)    New Mexico Unfair Practices Act, N.M. Stat. Ann. 57 12 1, et seq.; 33) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law 349, et seq.;

34)    North Dakota Consumer Fraud Act, N.D. Cent. Code 51 15 01, et seq.; 35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes 75-1, et seq.;

36)    Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. 4165.01. et seq.;

37)    Oklahoma Consumer Protection Act, Okla. Stat. 15 751, et seq.;

38)    Oregon Unfair Trade Practices Act, Rev. Stat 646.605, et seq.;

39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. 201-1, et seq.;
40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws 6- 13.1-1, et seq.;
41) South Carolina Unfair Trade Practices Act, S.C. Code Laws 39-5-10, et seq.;
42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws 37 24 1, et seq.;
43) Tennessee Trade Practices Act, Tennessee Code Annotated 47-25-101, et seq.;
44) Texas Stat. Ann. 17.41, et seq., Texas Deceptive Trade Practices Act, et seq.;
45) Utah Unfair Practices Act, Utah Code Ann. 13-5-1, et seq.;
46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, 2451, et seq.;
47) Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, et seq.;
48) Washington Consumer Fraud Act, Wash. Rev, Code 19.86.010, et seq.;
49) West Virginia Consumer Credit and Protection Act, West Virginia Code 46A-6-101, et seq.;
50) Wisconsin Deceptive Trade Practices Act, Wis. Stat. 100. 18, et seq.; 51) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, et seq.

8. Accordingly, Plaintiffs and the Class seek declaratory and injunctive relief; an award of monetary damages for the losses caused by Defendants' unlawful conduct, an award of treble damages as allowed by the applicable consumer protection and RICO statutes, punitive damages, interest, attorneys' fees; costs of this action; and any such other and further relief this Court deems just and equitable.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as the matter raises a federal question under the laws of the United States.

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because (1) the Class has 100 or more class

members, (2) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (3) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

11. Jurisdiction is proper in this Court with regard to plaintiffs' and the Class's claims of violations of the RICO Act, pursuant to 18 U.S.C. § 1964.

12. The Court has personal jurisdiction over all defendants because their Hotels are located in Pennsylvania.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to Plaintiffs' and the Class's claims occurred in the Middle District of Pennsylvania.

## THE PARTIES

14. Plaintiffs Simchon are residents of the State of New York, who have been guests at one of defendants' Hotels.

15. Plaintiff Padula is a resident of the Commonwealth of Pennsylvania, who has been a guest at one of defendants' Hotels.

16. Upon information and belief, Highgate is a limited partnership duly organized and existing in the State of Delaware with its principal places of business located in Irving, Texas.

17. Upon information and belief, Cove Haven is a corporation duly organized and existing in the Commonwealth of Pennsylvania, with its principal place of business located in Lakeville, Pennsylvania.

18. Upon information and belief, Highgate is the parent corporation of Cove Haven, and both Highgate and Cove Haven jointly operate defendants' Pennsylvania Hotels identified below in paragraph 2.

19. Upon information and belief, Highgate and Cove haven assumed ownership, operations and control over the Hotels in or around mid 2012. Upon information and belief, Highgate purchased the Hotels from their prior owner, Starwood, in mid 2012.

20. Upon information and belief, defendant Starwood owned, operated and controlled the Hotels up to approximately mid-2012, when Starwood completed a transaction to sell the Hotels to Highgate and Cove.

21. Upon information and belief, Starwood is a corporation duly organized and existing in the State of Connecticut, with its principal place of business located in Stamford, Connecticut.

## FACTUAL ALLEGATIONS

**General Facts Regarding Defendants' Practices and Class Complaint**

22. Defendants own and operate three hotel resorts (the "Hotels"), Cove Haven Resort, Paradise Stream Resort, and Pocono Palace Resort, commonly billed as luxurious 'romantic destination resorts' with amenities such as a 'champagne glass, whirlpool bath for two', in an area of Pennsylvania commonly known as the Poconos.

23. Upon information and belief, defendants aggressively market the three Hotels to residents of all fifty states via Internet marketing and marketing via traditional media such as newspaper and television.

24. As with any traditional hotel relationship, consumers commonly book rooms at defendants' Hotels  for vacations and 'getaways', and pay the Hotels their stated room rates and other fees for such bookings at the Hotels.

25. As such, defendants derive the vast majority of their revenue and profit from the Hotels based on the fees paid by consumers related to bookings and stays at the Hotels.

26. At all times relevant to this matter, the Hotels predominantly accept bookings from consumers well in advance of the consumers' stays at the Hotels. Specifically, the Hotels provide a website where consumers can book a stay, confirm a stay, and pay a deposit for a stay.   Upon information and belief, the Hotels also accept reservation and payment via telephone, and through third party websites.

27. Accordingly, upon information and belief consumers throughout all fifty states can and have booked and paid a deposit for stays while present within the borders of within all fifty states.

28. At all times relevant to this matter, the Hotels operate under a common policy with respect to fees charged to consumers for bookings at the Hotels.

29. Defendants' policy with respect to fees charged to consumers blatantly deceives consumers by intentionally mislabeling fees, and inducing consumers to pay additional fees on top of the stated room rate.

30. Specifically, the policy of the Hotels with respect to billing its consumers for stays is as follows (the "Policy")[2]:

---

[2] Upon information and belief, the Policy previously included an 18% 'gratuity', which has since been upgraded to a 20% 'gratuity'.

"A minimum of $100 deposit on a credit card is required to confirm your reservation. Extras will be charged to credit card at time of booking. Early checkout results in a $100 per night charge for each unused room night. A valid credit card must be given at the time you submit your reservation. The following credit cards will be accepted for your deposit: American Express, Visa, MasterCard and Discover Card. If you wish to cancel your reservation, you must do so at least 5 days or more prior to the arrival date in order to obtain a refund. A cancellation made less than 5 days prior to arrival will result in a forfeit of your deposit. No shows will be charged for one night room plus tax. A 6% sales tax, 3% county tax, **20% gratuity** and a daily resort fee of $20 plus tax per occupied room is applied to all reservations.

Your credit card will be charged a deposit of $100.00. In the event you change your plan, you must cancel or change your hotel reservation in accordance with the hotel's cancellation policy to avoid penalties." (emphasis added)

31. As per the Policy, defendants' Hotels charge all consumers, including plaintiffs and the Class, a 20% 'gratuity' on top of the stated room rate (the "Stated Gratuity"), as calculated per the Policy. Defendants charge this Stated Gratuity under the guise of gratuity, which the Stated Gratuity most certainly is not.

32. Therefore, at the time consumers book their stays at defendants' hotels, consumers are intentionally deceived by defendants into believing that the additional Stated Gratuity they are committing to, and paying a deposit for, is an actual gratuity, when it most certainly is not.

33. Essentially, the Stated Gratuity is not a gratuity in any respect, as it is merely an extension of the room rate, and accrues directly to defendants' companies to pay as revenue, to pay expenses, and to increase profits.

34. This is not the first and only time that consumers, including plaintiffs and the Class, are duped by defendants into believing that the additional Stated Gratuity is

an actual gratuity. In fact, defendants continue to deceive consumers regarding the true purpose of this so called 'gratuity' up to and through final payment of the gratuity at check-out.

35. Upon check-in at defendants' Hotels, for example, guests are told yet again that the additional Stated Gratuity is an actual gratuity, and a tip, for service staff, which it most certainly is not.

36. Upon check-out at the Hotels, guests are given an invoice which, again, specifically lists the additional Stated Gratuity as a gratuity, which, again, it most certainly is not.

37. In paying this additional Stated Gratuity, plaintiffs and the Class relied on defendants' numerous and repeated fraudulent and deceptive statements, from booking to check-in, to check-out, which clearly and indisputably characterize this significant 18-20% fee as a gratuity.

38. With each and every payment of this Stated Gratuity, plaintiffs and the Class have suffered losses in the amount of the entirety of the 18-20% Stated Gratuity, due to defendants' fraudulent and deceptive practices.

39. Indisputably, this Stated Gratuity is not a gratuity in any respect, as per plaintiffs', the Class's, or any rational person's understanding of the meaning of 'gratuity'.

40. As per the common understanding of a 'gratuity', a gratuity is "an amount of money given to a person (such as a waiter or waitress) who has performed a service." http://www.merriam-webster.com/dictionary/gratuity.

41. Defendants' Stated Gratuity is by no means a true gratuity in any sense of the word.

42. Plaintiffs and the Class paid this Stated Gratuity with the expectation and intention that the Stated Gratuity would be distributed to Defendants' service employees, such as waiters and waitresses.

43. As plaintiffs and the Class paid this Stated Gratuity based on the common understanding and definition of gratuity, and as defendants intentionally misrepresented the purpose of this fee to plaintiffs and the Class (and retained the fee for the benefit of the companies), the various statutes and torts articulated herein have been violated by defendants with respect to plaintiffs and the Class.

**Facts Specific to Lead Plaintiffs Erica Bloom Simchon and Isaac Simchon**

44. On January 20, 2011, plaintiffs Simchon accessed defendants' website, which had information regarding defendants' three Hotels, from their home in Brooklyn, New York, with the intention of potentially booking a room at defendants' Paradise Stream Resort.

45. At that time, defendants' website quoted plaintiffs Simchon a room rate plus fees to book a room at Paradise Stream Resort from February 24, 2011, to February 26, 2011. Among the rates and fees quoted by defendants to plaintiffs Simchon was: '**Gratuity $108.00**', which totaled 18% of the total room rate for the reserved day.

46. Along with the quoted rate and fees, defendants' website articulated defendants' Policy, as described above, which included the language that a gratuity was applied to the reservation.

11

47. Relying on defendants' deceptive representation that the additional Stated Gratuity, on top of the stated room rate was a 'gratuity', plaintiffs Simchon *reserved the room and paid a $100.00 deposit*, and provided her credit card for security for the remaining balance, on January 20, 2011, from their home computer in New York. Plaintiffs Simchon received a confirmation email, which included the $108 cost, clearly labeled as 'Gratuity'.

48. On February 24, 2011, plaintiffs Simchon checked-in to defendants' Paradise Stream Resort, in Pennsylvania. At check-in, the front desk person at Paradise Stream Resort explained the total room cost to plaintiffs Simchon, including the Stated Gratuity, which she described as a gratuity for the service staff.

49. Relying on defendants' Policy and the representations from the front desk person regarding fees and costs, including the Stated Gratuity, plaintiffs Simchon completed the reservation, presented their credit card, and checked in to the hotel.

50. On February 26, 2011, plaintiffs Simchon checked out of Paradise Stream Resort. At the time of check out, plaintiffs Simchon paid the balance of the Stated Gratuity owed, as they relied on defendants' representations that the Stated Gratuity was an actual gratuity, as well as the other costs. This transaction occurred in the state of Pennsylvania.

51. Through various stages of trickery, Defendants misled plaintiffs Simchon into believing that the Stated Gratuity that she paid was money given to a person (such as a waiter or waitress) who has performed a service for plaintiff, which it was not. Rather, this fee was retained by defendants as additional revenue and profit.

52. Accordingly, plaintiffs Simchon suffered damages in the amount of no less than $108.00, as defendants, in a series of practiced maneuvers, intentionally and deceptively coerced plaintiffs into paying the Stated Gratuity.

**Facts Specific to Lead Plaintiff Nicholas Padula**

53. On July 12, 2015, plaintiff Padula accessed defendants' website, which had information regarding defendants' three Hotels, from his home in Pennsylvania, with the intention of potentially booking a room at defendants' Cove Haven Resort.

54. At that time, defendants' website quoted plaintiff Padula a room rate plus fees to book a room at Cove Haven Resort from Tuesday, July 14, 2015, to Wednesday, July 15, 2015. Among the rates and fees quoted by defendants to plaintiff Padula was: '**Gratuity $41.85**', which totaled 20% of the total room rate for the reserved day.

55. Along with the quoted rate and fees, defendants' website articulated defendants' Policy, as described above, which included the language that a 20% **gratuity** was applied to the reservation.

56. Relying on defendants' deceptive representation that the additional 20% fee, on top of the stated room rate was a '**gratuity**', plaintiff Padula *reserved the room and paid a $100.00 deposit*, and provided his credit card for security for the remaining balance, on July 12, 2015, from his home computer in Pennsylvania.

57. On July 14, 2015, plaintiff Padula checked-in to defendants' Cove Haven Resort. At check-in, the front desk person at Cove Haven Resort explained the total room

cost to plaintiff Padula, including the Stated Gratuity, which she described as a gratuity. Upon further questioning from plaintiff Padula, defendants' front desk person explained that the gratuity was a tip passed on to defendants' service staff.

58. Relying on defendants' Policy and the representations from the front desk person regarding fees and costs, including the Stated Gratuity, plaintiff Padula completed the reservation, presented his credit card, and checked in to the hotel.

59. On July 15, 2015, plaintiff Padula checked out of Cove Haven Resort. At the time of check out, the Stated Gratuity was listed on plaintiff Padula's invoice as a 'gratuity'. Plaintiff Padula paid the balance of the Stated Gratuity owed, as he relied on defendants' representations that the 20% fee was an actual gratuity, as well as the other costs. This transaction occurred in the state of Pennsylvania.

60. Through various stages of trickery, Defendants misled plaintiff Padula into believing that the Stated Gratuity that he paid was money given to a person (such as a waiter or waitress) who has performed a service for plaintiff, which it was not. Rather, this fee was retained by defendants as additional revenue and profit.

61. Accordingly, plaintiff Padula suffered damages in the amount of no less than $41.85, as defendants, in a series of practiced maneuvers, intentionally and deceptively coerced plaintiff into paying the Stated Gratuity.

## CLASS ACTION ALLEGATIONS

62. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs brings this action individually and on behalf of the following class of persons ("the Class"): All persons who have been guests of defendants' Cove Haven Resort, Paradise

Stream Resort and/or Pocono Palace Resort in the six (6) years immediately prior to the filing of this Complaint.

63. The individuals in the Class identified above are so numerous that joinder of all members of the class is impracticable because, upon information and belief, tens of thousands of persons have been guests of the Hotels during the relevant time statute of limitations period.

64. Questions of law and fact common to the Class include, but are not limited to, the following:

> (a) Whether the 18-20% fee subject of this litigation was characterized by defendants as a 'gratuity' to plaintiffs and persons belonging to the Class;
>
> (b) Whether plaintiffs and the Class paid the Stated Gratuity;
>
> (c) Whether defendants retained the Stated Gratuity, or passed the entirety of the Stated Gratuity on to its service staff for services rendered to plaintiffs and the Class.

65. The claims made by the named plaintiff are typical of the claims of the Class because the named plaintiff and the Class incurred the same type of damages; namely loss of the Stated Gratuity paid to defendants as the Stated Gratuity, as a direct result of the same practices and policies implemented by Defendants.

66. The named plaintiff will fairly and adequately protect the interests of the Class because the interests of the named plaintiff are aligned with those of the Class and the named plaintiff has no conflicts of interest with the Class. Likewise, the named plaintiff is represented by qualified and experienced counsel.

67. By engaging in such unlawful practices, Defendants have acted or refused to act on grounds generally applicable to the Class thereby making it appropriate that injunctive, declaratory, and monetary relief be awarded to the Class as a whole.

68. The questions of law and fact common to the Class, including those articulated in paragraph #58, predominate over questions affecting only the named plaintiff and a class action is a superior method of fair and efficient adjudication of this controversy rather than the other methods available.

69. For these reasons, the Class should be certified under Rule 23 of the Federal Rules of Civil Procedure.

### FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND CLASS

### Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §§ 201-1, *et. seq.*

70. Plaintiffs and the Class hereby repeat and reallege each allegation contained in paragraphs numbered 1 through 69, as if fully set forth herein.

71. The general purpose of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") is to protect the public from fraud and unfair and deceptive business practices. The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by the UTPCPL." 73 P.S. § 201-9.2(a).

72. This is a claim for violations of the UTPCPL, 73 P.S. § 201-2(xxi), which states, that unfair or deceptive acts or practices" mean any one or more of the following:

"Engaging in other fraudulent or deceptive conduct which creates the likelihood of confusion or misunderstanding." *Id.*

73. At all times relevant hereto, defendants conducted trade and commerce within the meaning of the UTCPL.

74. Plaintiffs and the Class are "persons" as defined under the UTPCPL.

75. Defendants have made and continue to make deceptive, false and misleading statements to those who reserve their Hotel rooms, including plaintiffs and the Class, by falsely labeling the Stated Gratuity a gratuity.

76. Plaintiffs and the Class relied upon defendants' deceptive, false and misleading representations in paying the Stated Gratuity.

77. Defendants' conduct as set forth herein constitutes an unconscionable commercial practice comprised of deceptive acts or practices in violation of 73 P.S. § 201-2(xxi).

78. As a direct and proximate result of defendants' unfair and deceptive acts or practices, plaintiffs and the Class have been injured, and suffered and will continue to suffer real damages.

79. As a result of the harm caused by defendants' violation of the UTPCPL, plaintiffs and the Class are entitled to recover compensatory damages, punitive damages, treble damages, and an award of attorneys' fees and costs, pursuant to 73 P.S. § 201-9.2(a).

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
## ON BEHALF OF PLAINTIFFS AND CLASS

### Racketeer Influenced and Corrupt Organizations Act,
### 18 U.S.C. § 1962

80. Plaintiffs and the Class hereby repeat and reallege each allegation contained in paragraphs numbered 1 through 79, as if fully set forth herein.

81. At all times relevant to this Complaint, plaintiffs and the Class are persons within the meaning of 18 U.S.C. §§ 1961(3).

82. At all times relevant to the Complaint, each defendant is a person and/or enterprise within the meaning of 18 U.S.C. §§ 1961(3), 1961(4) and 1962 (c).

83. At all times relevant to this Complaint, defendants were engaged in interstate commerce.

84. Defendants are a group of persons who operated to deprive plaintiffs and the Class of the Stated Gratuity in violation of the law.

85. Plaintiffs' and the Class's injuries caused by defendants arise out of one or more of the enunciated predicate racketeering activities pursuant to 18 U.S.C. § 1961(1), particularly mail fraud (18 U.S.C. §1341) and wire fraud (18 U.S.C. §1343), by engaging plaintiffs and the Class via phone, television and internet to reserve rooms in their Hotels and pay the Stated Gratuity, and by charging plaintiffs' and the Class's credit cards to pay the Stated Gratuity.

86. Plaintiffs and the Class were subject to a pattern of racketeering activity by defendants pursuant to 18 U.S.C. §§ 1961(5)

87. The injuries to plaintiffs and the Class were a direct, proximate and reasonably foreseeable result of defendants' violations of 18 U.S.C. § 1962.

88. Plaintiffs and the Class were the intended targets of defendants' RICO scheme.

89. As a result of defendants' RICO scheme, plaintiffs and the Class suffered concrete damages, in the amount no less than what each plaintiff or Class member paid to defendants as the Stated Gratuity.

90. Pursuant to 18 U.S.C. § 1964(c), plaintiffs and the Class are entitled to recover treble damages, plus costs and attorneys' fees from the defendants.

### THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS SIMCHON AND NEW YORK CLASS

#### New York General Business Law § 349 – Deceptive and Unfair Practices Act

91. Plaintiffs Simchon and the New York Class members hereby repeat and reallege each allegation contained in paragraphs numbered 1 through 90, as if fully set forth herein.

92. Plaintiffs Simchon bring this claim on behalf of themselves and Class members who received advertising regarding, and/or booked reservations with, defendants' Hotels ("New York Class").

93. Plaintiffs Simchon and the New York Class are "persons" within the meaning of N.Y. Gen. Bus. Law § 349 (h). Plaintiffs Simchon and the New York Class are consumers.

94. N.Y. Gen. Bus. Law § 349 (a) makes unlawful deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of service in New York State.

95. By the acts and conduct articulated herein, defendants committed unfair or deceptive acts and practices by representing their Stated Gratuity as a gratuity

prior to and at the time of making reservations, to persons located in New York State.

96. Defendants knew or should have known that their acts, practices, statements, correspondence, representations, as discussed herein, were false and likely to deceive and mislead plaintiffs and the Class.

97. The foregoing deceptive acts and practices were directed at consumers, including plaintiffs Simchon and the New York Class.

98. Plaintiffs Simchon and the New York Class have been injured as a result of defendants' violations of N.Y. Gen. Bus. Law § 349 (a).

99. Plaintiffs Simchon and the New York Class are entitled to bring this action pursuant to N.Y. Gen. Bus. Law § 349 (h), and entitled to damages pursuant to N.Y. Gen. Bus. Law § 349 (h).

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND CLASS

### Common Law Fraud

100.    Plaintiffs and the Class hereby repeat and reallege each allegation contained in paragraphs numbered 1 through 99, as if fully set forth herein.

101.    Defendants made material misrepresentations regarding the Stated Gratuity, particularly that the fee represented an actual gratuity, as per the dictionary definition of 'gratuity' and as per the common understanding of 'gratuity'.

102. Defendants' material misrepresentation came at the times that plaintiffs and the Class were searching for rooms to reserve at the Hotels, making reservations, checking in, and checking out of the Hotels, at the very least.

103. Defendants willfully and intentionally misrepresented the Stated Gratuity, as the Stated Gratuity was not passed on to defendants' service staff, but retained by defendants' companies.

104. As a result, Plaintiffs and the Class relied on defendants' misrepresentations when paying the Stated Gratuity.

105. As a result, plaintiffs and the Class were fraudulently induced to pay the Stated Gratuity.

106. Due to defendants' fraudulent conduct, plaintiffs and the Class suffered damages in an amount no less than the Stated Gratuity.

**FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**ON BEHALF OF PLAINTIFFS AND CLASS**

**Unjust Enrichment**

107. Plaintiffs and the Class hereby repeat and reallege each allegation contained in paragraphs numbered 1 through 106, as if fully set forth herein.

108. As a result of defendants' deceptive, fraudulent and misleading representations, defendants were enriched, at the expense of plaintiffs and the Class, through the payments of the Stated Gratuity.

109. Plaintiffs and the Class conferred a benefit on defendants through paying the Stated Gratuity.

110. Defendants have knowledge of this benefit, and have voluntarily accepted and retained this benefit.

111. Defendants will be unjustly enriched if they are allowed to retain such funds, and each plaintiff and Class member is entitled to an amount equal to an amount they enriched defendants and for which defendants have been unjustly enriched.

112. Under the circumstances, it would be against equity and good conscience to permit defendants to retain ill-gotten benefits that they received from plaintiffs and the Class.

113. Defendants profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of plaintiffs and the Class.

114. Plaintiffs and the Class have standing to pursue this claim as plaintiffs and the Class have suffered injuries in fact, and have lost money, as a result of defendants' actions, as set forth herein. Defendants are and were aware that the representations that they made about the Stated Gratuity are and were false, misleading, and likely to deceive reasonable customers, such as plaintiffs and the Class.

115. Plaintiffs and the Class do not have adequate remedies at law against defendants, in the alternative to the other causes of action stated herein.

116. Accordingly, plaintiffs and the Class are entitled to restitution to not less than the purchase Stated Gratuity paid by each plaintiff and Class member to defendants during the statutory period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class respectfully request that this Court enter a judgment containing the following relief:

a)      for an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, and naming plaintiffs as representatives of the Class and plaintiffs' Attorneys as Class Counsel to represent members of the Class;

b)      for an Order declaring that defendants' conduct violates the statutes referenced herein;

c)      for an Order finding in favor of plaintiffs and the Class on all Causes of Action listed herein;

d)      For compensatory, punitive and treble damages to be awarded to Plaintiffs and the Class.

e)      For prejudgment interest on all amounts ordered;

f)      for an Order of restitution and all other forms of equitable monetary relief;

g)      for injunctive relief as pleaded or as the Court may deem proper;

h)      for an Order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and,

i)      for any other relief that the Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: _____7/23_____, 2015
New York, New York

LEVINE & BLIT, PLLC

Matthew J. Blit, Esq.
*Attorneys for Plaintiffs*
*and the Class*
350 Fifth Avenue, Suite 3601
New York, NY 10118
(212) 967-3000
mblit@levineblit.com