## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIKA SIMCHON, et al.,** | : | **Civil No. 3:15-CV-1434** |
| | : | |
| **Plaintiffs** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | |
| | : | |
| **HIGHGATE HOTELS, L.P., et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

This case, which comes before us for consideration of two motions to dismiss, is a putative class action lawsuit brought by the plaintiffs, patrons at several Pocono area resorts against the owner-operators of those resorts.  In their complaint, the plaintiffs allege that the defendant resorts have engaged in a widespread billing fraud scheme by billing patrons in advance for gratuities that the resorts represent are to be paid to its employees. In fact, according to the plaintiffs, these moneys are never remitted to resort service employees but are fraudulently pocketed by the defendants themselves.

While the defendants have sought dismissal of a number of the claims set forth in this complaint, citing a variety of alleged deficiencies in these pleadings, upon a commonsense reading of the amended complaint in its entirely we believe that this

pleading adequately states a fraudulent scheme in violation of federal and state common and statutory law. We note, however, that the chronology of events recited in the complaint seems to reveal that all of the defendants cannot be held liable for all of the acts alleged, since the ownership of the resorts was allegedly transferred from Defendant Starwood to Defendant Highgate in 2012. (Doc. 8, ¶¶20, 21.) Therefore, we will recommend that the motion to dismiss be granted, in part, to the extent that this pleading may only seek to attribute liability to the appropriate owner-operator of the resorts at the time of the alleged fraud. We also find that claims made by the Simchon plaintiffs under New York General Business Law Section 349 should be dismissed as time-barred. In all other respects, it is recommended that the motion to dismiss be denied.

The well-pleaded facts in this case are set forth in the plaintiffs' 26-page, 126-paragraph amended civil complaint. (Doc. 8.) That complaint names five plaintiffs, Eric and Isaac Simchon, Nicholas Padula, and Aliza and Andrew Siebert. (Id.,¶¶14-16.) The Simchons and the Sieberts reside in New York, Padula is a resident of Pennsylvanian. (Id.) All of the plaintiffs allege that they have been patrons of the resorts in the Poconos owned and operated by the defendants, Highgate Hotels and Starwood Hotels and Resorts. (Id.) The complaint recites that ownership and operation

of these Pocono resorts was transferred from Defendant Starwood to Defendant Highgate in 2012. (Id., ¶¶20, 21.)

According to the plaintiffs, the Simchons stayed at these resorts in January-February of 2011. (Id., ¶¶45-53.) Padula stayed at the resorts in July of 2015. (Id., ¶¶54-62.) The Sieberts, in turn, stayed at the resorts in August of 2014. (Id., ¶¶63-71.) Each of the plaintiffs allegedly used the mails or wire facilities in interstate commerce to book these reservations. (Id., ¶95.)  The plaintiffs then all allege that they were victimized by a common fraudulent billing practice employed by the defendants. That billing practice is set forth in detail in the complaint, (Id., ¶¶1-8, 23-44, 54-71), but essentially plaintiffs allege that when patrons booked reservations at the defendants' resorts, they were billed a resort fee and a separate gratuity fee. If customers questioned the gratuity fee they were advised that this fee was charged to cover tips customarily paid to staff so the customer would not need to tip staff while at the resort. Despite these representations, plaintiffs allege that the gratuity or tip fee billed to customers was never shared with employees.  Thus, stripped to its essence, the complaint alleges that the defendants engaged in a scheme to mislead customers into pre-paying tips and gratuities but then converted those tips payments to the defendants' own benefit.

On the basis of these factual averments, the plaintiffs bring five claims against the defendants, alleging that this fraudulent billing practice: (1) violated Pennsylvania's Unfair Trade Practice and Consumer Protection Law, (Id., ¶¶80-89); (2) constituted a federal civil RICO violation, (Id., ¶¶90-100); (3) violated the New York General Business Law Section 439-Deceptive and Unfair Practices Act, (Id., ¶¶101-109);[1] (4) constituted a common law fraud, (Id., ¶¶110-116); and (5) stated a common law claim of unjust enrichment. (Id., ¶¶117-126.)

The defendants have filed two motions to dismiss these claims. (Docs. 19 and 21.) These motions to dismiss raise an array of objections to the legal sufficiency of the complaint. (Id.) These motions are fully briefed by the parties and are, therefore, ripe for resolution. For the reasons set forth below it is recommended that the motions to dismiss be granted, in part, and denied, in part as follows: First, the chronology of events recited in the complaint reveals that all of the defendants cannot be held liable for all of the acts alleged, since the ownership of the resorts was allegedly transferred from Defendant Starwood to Defendant Highgate in 2012. (Doc. 8, ¶¶20, 21.) Therefore, we recommend that the motion to dismiss be granted, in part, to the extent that this pleading may only seek to attribute liability to the appropriate owner-operator

---

[1]This particular claim is brought against the defendants only on behalf of the New York resident plaintiffs, the Simchons and Sieberts.

of the resorts at the time of the alleged fraud. Second, we also find that claims made by the Simchon plaintiffs under New York General Business Law Section 349 should be dismissed as time-barred. In all other respects, it is recommended that the motion to dismiss be denied.

## II.   Discussion

### A.   Standard of Review: Motion to Dismiss

In this case the defendants have also filed two motions to dismiss. A motion to dismiss serves a specific purpose under the law. A motion to dismiss is designed to test the legal sufficiency of a complaint. Thus, Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at

556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 550 U.S. at 555). Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements. See Iqbal, 556 U.S. at 678–79, 129 S.Ct. 1937; Twombly, 550 U.S. at 555–57, 127 S.Ct. 1955; Burtch, 662 F.3d at 220–21." James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012).

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility

and plausibility of "entitlement of relief." ' " <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011) <u>cert. denied,</u> 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

Thus, in assessing a motion to dismiss the court engages in a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id.</u>" <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also, U.S. Express Lines, Ltd.</u>

v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. Only The Defendant Who Owned and Operated the Resort at the Time of The Alleged Fraudulent Billing Should Be Held Accountable for Specific Alleged Wrongful Acts

At the outset, we note that the motions to dismiss highlight a certain degree of ambiguity in the plaintiffs' pleading. That pleading recites that various fraudulent billings took place between 2011 and 2015. The complaint then seems to seek to hold Highgate and Starwood collectively liable for these fraudulent billings. The complaint, however, does not identify the defendants as joint venturers in this enterprise. Rather, it described them as simple successors in interest, alleging that ownership of the resorts was transferred from Defendant Starwood to Defendant Highgate in mid-2012. (Doc. 8, ¶¶20, 21.) On these facts, defendant Starwood argues that it may not be held liable for acts occurring after it transferred ownership of the resorts to Highgate.

Given the well-pleaded facts in the complaint, we agree that defendant Starwood cannot be held collectively liable for all of these allegedly fraudulent billings. Rather, liability should follow ownership and operation of the resorts, and

each defendant should be liable only for those acts committed during the defendant's tenure as the owner-operator of the resort.

While the plaintiffs have resisted this individualized attribution of liability by arguing, in part, that they identified the transfer of ownership solely on information and belief, and asserting that their complaint "leaves open the possibility that Starwood could have retained at least some ownership interest in the Hotels after mid-2012," (Doc. 31, p.5), this argument is insufficient to state a claim against Starwood for events occurring after 2012. As we have noted:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). *This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully*.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012)(emphasis added). Since the plaintiffs' response to this aspect of defendant

Starwood's motion to dismiss expressly rests on a mere possibility of liability, something which the courts have held is legally insufficient, Starwood is entitled to dismissal of any claims against it relating to conduct occurring after 2012, and its motion to dismiss these claims should be granted. Likewise Defendant Highgate may not be held liable for any claims brought by the plaintiffs's which pre-date its acquisition of these properties in 2012.

### C.   The Amended Complaint Adequately States Civil RICO and Common Law Fraud Claims

In addition, the defendants seek dismissal of the civil RICO claims set forth in the plaintiffs' complaint, and related common law fraud claims, arguing that this pleading fails to adequately state the elements of either a civil RICO claim or a common law fraud. We disagree.

With respect to civil RICO claims involving allegations of fraud, the level of pleading specificity required in a complaint is clear. As the United States Court of Appeals for the Third Circuit has observed:

> In order to plead a [civil] violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. A pattern of racketeering activity requires at least two predicate acts of racketeering. See 18 U.S.C. § 1961(5). These predicate acts of racketeering may include, *inter alia,* federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud. See 18 U.S.C. §§ 1341, 1343. " 'A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to

deceive persons of ordinary prudence and comprehension.' " Where, . . ., plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity. In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.". Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.*

Lum v. Bank of America, 361 F.3d 217, 223-4 (3d Cir. 2004)(citations omitted, emphasis added).

Similarly, "[p]ursuant to Rule 9(b), a plaintiff averring a claim in fraud must specify ' "the who, what, when, where, and how: the first paragraph of any newspaper story."' Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)). 'Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."' In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir.2002) (quoting In re Nice Sys., Ltd. Secs. Litig., 135 F.Supp.2d 551, 577 (D.N.J.2001), emphasis supplied)." Animal Science Products, Inc. v. China Nat. Metals & Minerals Import & Export Corp., 596 F.Supp.2d 842, 878 (D.N.J.,2008).

Here, when the amended complaint is read as a whole and construed in a commonsense fashion, we believe that it satisfies the heightened pleading standards required for pleading a RICO violation based upon mail or wire fraud, and common law fraud. Fairly construed, the amended complaint provides a detailed description of this allegedly fraudulent billing practice. (Id., ¶¶1-8, 23-44, 54-71.)  That description provides us with what Rule 9 commands in that it describes "the who, what, when, where, and how: the first paragraph of any newspaper story."'  Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999). According to the amended complaint when patrons booked reservations at the defendants' resorts, they were billed a resort fee and a separate gratuity fee. If customers questioned the gratuity fee they were advised that this fee was charged to cover tips customarily paid to staff so the customer would not need to tip staff while at the resort. Despite these representations, plaintiffs allege that the gratuity or tip fee billed to customers was never shared with employees but was, in effect, taken by the defendants.  Thus, stripped to its essence, the complaint alleges that the defendants engaged in a scheme to mislead customers into pre-paying tips and gratuities but then converted those tips payments to the defendants' own benefit. The plaintiffs further allege when they were victimized by this false billing practice, and even itemize the amount of their alleged losses. At this initial pleading stage of the litigation we do not believe that more is needed to state a fraud-based

claim, either as a civil RICO violation or as a common law fraud. Therefore, this aspect of the defendants' motion to dismiss should be denied.

### D.   The Amended Complaint Adequately States a Claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1 (UTPCPL),

The defendants also seek the dismissal of the plaintiffs' claims of deceptive conduct under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1 (UTPCPL). As to this count of the complaint, a review of the complaint suggests that, as drafted, the plaintiffs' claims  appear to be premised upon §2011-2(4 )(xxi) of the UTPCPL, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." This statutory prohibition against "deceptive conduct does not require proof of the elements of common law fraud, but . . . knowledge of the falsity of one's statements or the misleading quality of one's conduct is still required." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 (3d Cir. 2013). "Therefore, in order '[t]o establish liability under the catch-all provision of the UTPCPL, "a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." Slapikas v. First Am. Title Ins. Co., CIV.A. 06–0084, —— F.R.D. ——, ——, 2014 WL 899355, at *6 (W.D.Pa. Mar.7, 2014) (citing Seldon v. Home Loan Servs., 647 F.Supp.2d 451, 470

(E.D.Pa.2009); <u>Hunt v. U.S. Tobacco Co.</u>, 538 F.3d 217, 223 (3d Cir.2008)).' <u>Prukala</u>

<u>v. Elle</u>, 3:14–CV–92, 2014 WL 1311125, \*3 (M.D.Pa. Mar.28, 2014)." <u>Stephens v.</u>

<u>State Farm Fire & Cas. Co.</u>, No. 1:14-CV-160, 2014 WL 5312682, at \*9 (M.D. Pa.

Oct. 16, 2014).

Here, we have little difficulty concluding that this pleading standard has been

met. The plaintiffs have alleged a deceptive act, the billing of a gratuity fee which was

represented as a payment to resort service employees, but was allegedly converted to

the direct benefit of the defendants instead. Fairly construed, the amended complaint

also alleges that the plaintiffs relied upon this deceptive action, in that they paid a

gratuity fee believing it to be a mandatory service employment tip reimbursement and

without knowing that the hotel owners were converting the fee to their own benefit.

Finally, the amended complaint itemizes the amount of the fee incurred by each

named plaintiff, thus satisfying the UTPCPL's ascertainable loss requirement.

Perhaps recognizing that the elements of a UTPCPL claim are otherwise met

here, the defendants raise several additional objections to this claim. First, relying

largely upon cases which have dealt with alleged deceptive practices occurring wholly

outside the Commonwealth of Pennsylvania, defendants argue that UTPCPL only

applies to fraud claims made by Pennsylvania residents, and seek the dismissal of the

New York resident plaintiffs' UTPCPL claims.  While this argument draws some

support from case law, upon reflection we believe that the UTPCPL is not as parochial

in its reach as the defendants allege. On this score, the competing case law has recently been aptly summarized in the following terms:

> The Pennsylvania Supreme Court has long instructed that the UTPCPL be construed liberally in order to effectuate its primary purposes of preventing fraud and deceptive practices. See Com., by Creamer v. Monumental Prop., Inc., 329 A.2d 812, 816 (Pa. 1974). Nevertheless, the Pennsylvania Supreme Court has also noted that the purpose of the Pennsylvania General Assembly in passing the UTPCPL was to protect *its citizens*. See Com. by Packel v. Ziomek, 352 A.2d 235, 238 (Pa. 1976). As such, it is no surprise that many federal courts in Pennsylvania have recognized that, in general, non-residents of the Commonwealth cannot recover under the UTPCPL. See Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 213 (E.D. Pa. 2000) (in the context of class certification, refusing to apply the UTPCPL to the putative class members who were not residents of Pennsylvania because they "have a due process right to have their claims governed by state law applicable to their dispute."); Baker v. Family Credit Counseling Corp., 440 F.Supp.2d 392, 414 (E.D. Pa. 2006) (refusing to apply the UTPCPL to named class members who were not residents of Pennsylvania); Levy v. Keystone Food Prod., 2008 WL 4115856, *6 (E.D. Pa. 2008) (concluding that in the absence of any authority to the contrary, the UTPCPL does not have extraterritorial effect, and therefore, dismissing the non-resident Plaintiff's claim); Lewis v. Ford Motor Co., 263 F.R.D. 252, 258 n. 7 (W.D. Pa. 2009) ("It is well-established that individuals who are not Pennsylvania citizens have no standing to bring suit under [Pennsylvania's] CPL."); Rios v. Cabrera, 2010 WL 5111411, *3 (M.D. Pa. 2010) (concluding that if the plaintiff, a New York Consumer, was permitted to invoke the UTPCPL to conduct occurring outside of Pennsylvania, it would constitute "geographic overbreadth" because the UTPCPL does not have extraterritorial effect and also that it would be unconstitutional under the Commerce Clause of the United States Constitution). Federal courts sitting in other states analyzing Pennsylvania law have likewise concluded that non-residents of Pennsylvania cannot generally invoke the UTPCPL. See Beye v. Horizon Blue Cross Blue Shield of New Jersey, 568 F.Supp.2d 556, 570 (D.N.J. 2008) ("[Plaintiff] is a New Jersey citizen and therefore has no grounds upon which to bring a claim under the Pennsylvania [UTPCPL]."); Washington v. Internet Order, LLC, 2015 WL 918694 (W.D. Wash. 2015) ("[C]ase law indicates that

the CPL has no effect beyond the boundaries of Pennsylvania. Pennsylvania courts have repeatedly held that the CPL does not have extraterritorial effect."). Therefore, in order for a non-resident of Pennsylvania to be able to recover under the UTPCPL, he must, at the very least, allege a "sufficient nexus" with Pennsylvania. Wolfe v. McNeil-PPC, Inc., 773 F.Supp.2d 561, 575 (E.D. Pa. 2011) (citing Haggart v. Endogastric Solutions, Inc., 2011 WL 466684, *7 (W.D. Pa. 2011)). In other words, the non-resident plaintiff must be engaged in a transaction within the state to be covered under the UTPCPL. Mikola v. Penn Lyon Homes, Inc., 2008 WL 2357688, *3 (M.D. Pa. 2008); see also A.H. Jr., v. Janssen Pharm., Inc., 2015 WL 6442359, *9 (Pa. Com. Pl. Phila. Cty. 2015). The fact that a defendant is headquartered in and conducts significant business in Pennsylvania, however, does not establish a sufficient nexus with Pennsylvania. See In re Avandia Marketing, Sales Practices and Products Liab. Litig., 2013 WL 5761202, *9 (E.D. Pa. 2013) (concluding that a non-resident of Pennsylvania lacked standing to sue a Pennsylvania-based entity under the UTPCPL notwithstanding that the alleged wrongdoing was orchestrated in and emanated from Pennsylvania). Instead, . . . , we focus on the plaintiff's contacts with the state whose law he is seeking to invoke when determining whether there is a sufficient nexus with the state. Compare Wolfe, 773 F.Supp.2d at 574-75 ("That some of the defendants maintain principal places of business in Pennsylvania is simply too attenuated a connection to support a UTPCPL claim" where the non-resident's injury occurred in Maine and Massachusetts), with Haggart, 2011 WL 466684, at *7 (the non-resident Plaintiff could seek protection under the UTPCPL because the plaintiff's surgery and injury occurred in Pennsylvania).

Danganan v. Guardian Prot. Servs., No. CV 15-1495, 2016 WL 3977488, at *2 (W.D. Pa. July 25, 2016).

Applying these legal benchmarks, we conclude that a UTPCPL claim may be brought either: (1) by Pennsylvania residents, or (2) by non-resident plaintiffs engaged in a transaction within the state that would be covered under the UTPCPL. Judged against this standard, we believe that the plaintiffs have adequately alleged that the

billing practices of the defendants, which allegedly arose at resorts located in Pennsylvania and affected patrons of those resorts, sufficiently described transactions within the Commonwealth of Pennsylvania which would be covered by the UTPCPL. Indeed, the result urged by the defendants would result in a curious anomaly. It would permit patrons of a hotel in Pennsylvania to be deceived in identical fashions in identical transactions which would take place in Pennsylvania, but would only allow those patrons who also resided in the state to sue under state law. Given the UTPCPL's broad remedial scope, we do not believe that the legislature meant to be so narrow and parochial in its approach to curbing deceptive trade practices in this Commonwealth. Therefore, the motion to dismiss the non-Pennsylvania resident UTPCPL claims should be denied.

Finally, citing the booking agreement between these patrons and the hotels as a contract, the defendants argue that the economic loss doctrine bars consideration of these essentially contractual claims under the UTPCPL. In this regard, it has been observed that:

> Under Pennsylvania law, the economic loss doctrine " 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.' " Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir.2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir.1995)). It is "designed to...establish clear boundaries between tort and contract law." Id. at 680. Accordingly, where a "plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania law says that plaintiff's redress comes from the law of

contract, not the law of tort." Martin v. Ford Motor Co., 765 F.Supp.2d 673, 684 (E.D.Pa.2011) (citation omitted).

The issue of whether the economic loss doctrine applies to statutory claims under the UTPCPL has been the subject of much dispute in Pennsylvania. The Pennsylvania Supreme Court has not yet ruled on whether the economic loss doctrine bars intentional fraud and deceptive practices claims stemming from a statute such as the UTPCPL. However, the Third Circuit has predicted that the Pennsylvania Supreme Court would hold that UTPCPL claims are barred by the economic loss doctrine. Werwinski, 286 F.3d at 681.

The Werwinski decision, however, has generated considerable criticism. See, e.g., O'Keefe v. Mercedes–Benz USA, LLC, 214 F.R.D. 266, 275 (E.D.Pa.2003) (engaging in a critique of Werwinski and declining to adopt the Third Circuit's reasoning). In Knight v. Springfield Hyundai, 81 A.3d 940 (Pa.Super.Ct.2013), the Pennsylvania Superior Court held that UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence. Id. at 951–52. Courts that have addressed the issue after Knight have split. Some courts have held that Werwinski is no longer controlling authority and have followed Knight in ruling the doctrine inapplicable to claims brought under the UTPCPL. Roberts v. NVR, Inc., No. 15–489, 2015 WL 3745178, at *5 (W.D.Pa. June 15, 2015); Horne v. Progressive Advanced Ins. Co., No. 15–1029, 2015 WL 1875970, at *1 n. 1 (E.D.Pa. April 24, 2015); Kantor v. Hiko Energy, LLC, No. 14–5585, 2015 WL 1650049, at *3 (E.D.Pa. April 14, 2015).

Other courts have held that the Werwinski prediction of the Pennsylvania Supreme Court's ruling on the economic loss doctrine remains binding on the district courts in this circuit until either the Pennsylvania Supreme Court or the Third Circuit rules otherwise. McGuckin v. Allstate Fire and Cas. Ins. Co., No. 15–2173, 118 F.Supp.3d 716, 720–21, 2015 WL 4579028, at *3 (E.D.Pa. July 30, 2015); Vaughan v. State Farm Fire & Cas. Co., No. 14–1684, 2014 WL 6865896, at *4 & n. 6 (E.D.Pa. Dec. 3, 2014); Pesotine v. Liberty Mut. Group, Inc., No. 14–784, 2014 WL 4215535, at *4 n. 1 (M.D.Pa. Aug. 25, 2014); see also Moore v. State Farm Fire & Cas. Co., No. 14-3113, 2015 WL 463943, at *2 (E.D. Pa. Feb. 4, 2015) (applying Werwinski after Knight); Zeglen v. Nw. Mut.

Life Ins. Co., No. 14–173, 2014 WL 4215531, at *4 (M.D.Pa. Aug. 25, 2014) (same).

Ridolfi v. State Farm Mut. Auto. Ins. Co., 146 F. Supp. 3d 619, 625–26 (M.D. Pa. 2015).

While the conundrum created by the disparate directions which the Third Circuit an the Pennsylvania Superior Court have taken in applying to economic loss doctrine to UTPCPL claims does not admit of simple answer, we believe that the most persuasive answer to this riddle is found in Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d 421, 426–28 (E.D. Pa. 2015) where the district court resolved this riddle in the following manner:

> The Werwinski court followed the typical analysis in predicting what the highest state court would hold. Id. at 675 (quoting Hughes v. Long, 242 F.3d 121, 128 (3d Cir.2001)). It engaged in a four-step process, examining "(1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issues we face here." Id. Because there were no Pennsylvania Supreme Court or intermediate appellate court decisions addressing the issue, the court looked to decisions in other jurisdictions.
>
> Werwinski no longer has any vitality. When it was decided, there was no guidance from Pennsylvania courts, leading the Third Circuit to predict how Pennsylvania's highest court would rule. Werwinski, 286 F.3d at 675. The Pennsylvania courts, the highest court and the intermediate appellate courts, had not yet addressed the issue. Since Werwinski issued, the Pennsylvania courts have spoken. They have held that the economic loss doctrine does not apply to UTPCPL claims.
>
> A predictive ruling by the Third Circuit is generally binding on the district court. However, when the Pennsylvania intermediate appellate

courts have ruled to the contrary and their decisions have not been overruled by the state's highest court, we are no longer compelled to follow the Third Circuit's prediction. See Aceto v. Zurich Ins. Co., 440 F.2d 1320, 1322 (3d Cir.1971) ("No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Pennsylvania Supreme Court has not ruled upon that legal question."). It is state law, not federal law, we must follow. The Pennsylvania Supreme Court has not expressly held that the economic loss doctrine precludes recovery for economic losses resulting from violations of the UTPCPL. But, the Pennsylvania Superior Court has, holding that the doctrine does not bar statutory fraud claims brought pursuant to the UTPCPL. Knight v. Springfield Hyundai, 81 A.3d 940, 952 (Pa.Super.2013). Furthermore, the Pennsylvania Supreme Court has acknowledged that a negligent misrepresentation claim is outside the reach of the economic loss doctrine. Bilt–Rite Contractors, Inc. v. The Architectural Studio, 581 Pa. 454, 866 A.2d 270, 288 (2005).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

The Superior Court's holding, unless and until it is overruled by the Pennsylvania Supreme Court, is the law of Pennsylvania. See Commonwealth v. Forbes, 867 A.2d 1268, 1279 (Pa.Super.2005) (citation omitted). In the absence of guidance from the Pennsylvania Supreme Court, we look to decisions of the intermediate appellate courts for assistance in predicting how the Supreme Court would rule. Gares v. Willingboro Twp., 90 F.3d 720, 725 (3d Cir.1996) (citation omitted). Indeed, rulings of the intermediate appellate courts are "accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise." U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir.1996) (citation omitted). Indeed, under the Pennsylvania scheme, Pennsylvania lower courts must follow the precedential rulings of the Superior Court. See Benson ex rel. Patterson v. Patterson, 782 A.2d 553, 555–56 (Pa.Super.2001). Thus, the Knight holding is binding Pennsylvania law.

Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d 421, 426–28 (E.D. Pa. 2015).

Thus, while the answer to this question is not free from doubt, we believe that the better view is that expressed by the court in <u>Kantor</u>, a view which is consistent with the course and direction of Pennsylvania appellate case law and would hold that the economic loss doctrine does not bar assertion of this UTPCPL claim.

### E.    The New York Resident Plaintiffs' New York General Business Law Claims Should Be Dismissed in Part

In addition to these Pennsylvania state law statutory claim, the New York resident plaintiffs have also brought a claim under the New York General Business Law Section 349. This statute provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful," and states that, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349 (a) and (h). In order to state a claim under this New York state consumer protection statute, a plaintiff must allege (1) a consumer oriented act or practice; (2) that was materially misleading; and (3) resulted in plaintiff's injury. <u>Stutman v. Chem. Bank</u>, 95 N.Y.2d 24, 29 (2000). "[A] plaintiff must allege that defendant's consumer-oriented, deceptive acts or practices caused actual…harm directly to plaintiff." <u>Baron v. Pfizer, Inc</u>., 42 A.D.3d 627, 628 (3d Dep't 2007) Furthermore, under New York law, "deception and

injury must be separately pled." <u>Ebin v. Kangadis Food Inc.</u>, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013).

While the defendants have argued that the allegations in this case do not sufficiently plead the elements of this state law statutory claim, we disagree. Read as a whole, and in a commonsense fashion, we believe that the amended complaint plainly identifies a consumer-oriented practice, hotel lodging billing practices. The amended complaint then describes a misleading aspect to this practice, an allegedly false billing scheme. As part of this scheme the plaintiffs were required to cover gratuities for service staff, gratuities that were collected by the defendants but allegedly never disbursed to their ostensible beneficiaries, and instead were converted by the defendants.[2] Finally, as we read the amended complaint, it identifies and quantifies an

---

[2]In our view this element of misleading conduct distinguishes this case from <u>Dimond v. Darden Restaurants, Inc.</u>, No. 13 CIV. 5244 KPF, 2014 WL 3377105, at *1 (S.D.N.Y. July 9, 2014), a case relied upon by the defendants in their motion to dismiss. In <u>Dimond</u> the court rejected the notion that an announced automatic gratuity added to a restaurant bill violated this New York statute, finding in part that this announced billing practice was not misleading since it was openly disclosed by the restaurant. In contrast, the gist of the plaintiffs' claim in this case is that the announced gratuity was not, in fact, treated as a gratuity since it was converted by the defendants and not remitted to service staff. In short there is an element of alleged deception to consumers in this case which was entirely lacking in <u>Dimond</u>. Indeed, we note that the alleged practice in this case–the conversion of employee tips by an employer–appears to have been found to violate New York labor laws, further bolstering the argument that it also transgresses New York consumer protection laws. <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F. Supp. 2d 253, 283 (S.D.N.Y. 2011) citing <u>Samiento v. World Yacht Inc.</u>, 10 N.Y.3d 70, 854 N.Y.S.2d 83, 883 N.E.2d 990, 996 (2008).

injury to the plaintiffs in the form of overbillings to the plaintiffs for this gratuity fee which was never paid to resort service employees, but was instead converted by the defendants.

The defendants nonetheless argue that this New York state law claim still fails as a matter of law, because the claim as pleaded by the plaintiffs, violates the requirement under New York law that, "deception and injury must be separately pled." Ebin v. Kangadis Food Inc., 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013). We disagree. In our view, the amended complaint adequately articulates a distinction between the deception and the loss. What is deceptive in this case is the representation that is made at the time of booking that a certain mandatory fee represents a service employee gratuity. The plaintiffs' loss does not occur at the time of this representation. Rather, it takes place later, when the plaintiff pays the hotel, and the hotel converts the billed gratuity to its own benefit. Construing the scheme in this way, we find that the plaintiffs have separately pled deception and injury as required by New York law.

While we find that the plaintiffs have sufficiently pleaded the substantive elements of a statutory claim under New York General Business Law Section 349, we observe that the defendants have made one final argument regarding this claim, which

is unrebutted by the plaintiffs. Noting that the Simchons are alleged to have stayed at these resorts in January-February of 2011, (Doc. 8, ¶¶45-53), and observing that this lawsuit was not filed until July 2015, some four years later, the defendants contend that this New York state statutory claim brought by the Simchons is barred by the applicable statute of limitations.

The plaintiffs have not contested this assertion, and we agree that this particular claim is time-barred since: "[t]hat claim is subject to the three-year limitations period imposed by CPLR 214 (2), which applies to actions 'to recover upon a liability . . . created or imposed by statute' (Gaidon v Guardian Life Ins. Co. of Am., 96 NY2d 201, 208 [2001])." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 789, 967 N.E.2d 1177 (2012). Therefore, in the absence of either any well-pleaded facts or well-founded legal arguments justifying equitable tolling of the statute of limitations this claim is time-barred and should be dismissed.

## F.    The Plaintiff's Unjust Enrichment Claim Survives

Finally, in their motions to dismiss the defendants challenge the legal sufficiency of the plaintiffs' unjust enrichment claim. In this regard, the defendants' argument can be simply stated: "Claims for unjust enrichment are based on a duty implied by law in the *absence* of an express agreement. See, e.g., Reed v. Chambersburg Area Sch. Dist., 951 F. Supp. 2d 706, 727 (M.D. Pa. 2013). Unjust enrichment does not lie where a contract exists. Id; Rahemtulla v. Hassam, 539 F. Supp. 2d 755, 781 (M.D. Pa. 2008)

(the contract defines the parties' rights, duties, and expectations). Because all of the Plaintiffs entered into contracts with Defendants (see *supra* Section III.B.1), Plaintiff's unjust enrichment claims must be dismissed. See, e.g., Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. 1999) (unjust enrichment

claims do not lie where a contract exists)." (Doc. 21-1, pp. 20-1.)  Thus, because the defendants view this dispute as solely one arising under a contract, they insist that the doctrine of unjust enrichment has no application here.

The difficulty with this argument is that we believe at the pleadings stage that the plaintiffs have adequately alleged a claim of common law fraud. See Section II.C., *supra*. Therefore we do not consider this as a case which presents claims arising solely under contract law. Viewed in this way, we note that:

> To prevail on an unjust enrichment claim in Pennsylvania, a plaintiff must demonstrate the following elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff. AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa.Super.Ct.2001); see also Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir.2000). "The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." AmeriPro, 787 A.2d at 991. Instead, "a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that ... would be unconscionable for her to retain." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir.2008) (quoting Torchia v. Torchia, 346 Pa.Super. 229, 499 A.2d 581, 582 (1985)).

EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 273 (3d Cir. 2010).

Applying these guideposts this court has declined to dismiss unjust enrichment claims on the pleadings, when those claims were properly brought in conjunction with civil fraud and RICO allegations. See Brown v. Access Midstream Partners, L.P., 141 F. Supp. 3d 323, 339 (M.D. Pa. 2015). This is the course we recommend be followed here. Considered on its merits, and based solely upon the pleadings, the plaintiffs have alleged sufficient facts to allow this unjust enrichment claim to proceed forward. They have described a benefit, a mandatory gratuity payment, which the plaintiffs conferred upon the defendants. They have also alleged that the defendants received and appreciated that benefit by accepting the payment, but converting it to their own use rather than remitting it to the resorts' service employees. Finally, the plaintiffs have alleged facts which would permit a finding that it was unconscionable for the defendants, the owner-operators of the resorts, to convert gratuities meant for service staff to their own corporate benefit. At the outset of this litigation, these allegations seem sufficient to state a claim for unjust enrichment. Therefore, this claim should not be dismissed on the pleadings.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED defendants' motions to dismiss (Docs. 19 and 21) be GRANTED, in part, and DENIED in part, as follows:

1.    The claims made by the Simchon plaintiffs under New York General Business Law Section 349 should be DISMISSED as time-barred.

2.    Defendant Starwood is entitled to dismissal of any claims against it relating to conduct occurring after 2012, and its motion to dismiss these claims should be granted. Likewise Defendant Highgate may not be held liable for any claims brought by the plaintiffs's which pre-date its acquisition of these properties in 2012.

In all other respects, the motions to dismiss should be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only

in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th   day of September, 2016.

_S/Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge